UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CELANESE CORPORATION, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-06-2265 |
| | § | |
| COASTAL WATER AUTHORITY., *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM AND ORDER

This case is before the court[1] on the motions to dismiss of defendants Coastal Water

Authority (Dkt. 12) and Kellogg, Brown & Root, Inc. (Dkt. 14).  Having considered the

parties' submissions, argument of counsel at the January 12, 2007 hearing, and the law, the

court concludes that defendants' motions should be granted in part and denied in part and

plaintiff Celanese Corporation should be given an opportunity to amend its complaint.

## I.    BACKGROUND

Plaintiff Celanese Corporation seeks recovery of costs incurred in remediating

environmental damage related to the release of methanol from a damaged pipeline in the City

of Shoreacres, Texas.  According to its complaint, Celanese discovered a leak in its methanol

pipeline in 2002 and took steps to remediate the contamination from the leak and investigate

its cause.  Celanese alleges that the pipeline was damaged in 1978 by the bucket of a backhoe

---

[1]    The parties have consented to the jurisdiction of this magistrate judge for all purposes,
including entry of judgment.  (Dkt. 21).

during excavation for installation of a 30" raw water pipeline below and perpendicular to the methanol pipeline.  CWA contracted with KBR to design and supervise installation of the 30" raw water pipeline.  Martin K. Eby Corporation was the contractor responsible for the installation of the 30" water pipeline.  According to Celanese, defendants knew the pipe was damaged, and tried to hide the damage by backfilling soil over the damaged pipeline and not informing Celanese of the incident.

Celanese has sued Coastal Water Authority (CWA), Kellogg, Brown & Root, Inc. (KBR), and Martin K. Eby Corporation alleging causes of action pursuant to Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9607, Section 361.344 of the Texas Solid Waste Disposal Act (SWDA), TEX. HEALTH & SAFETY CODE § 361.344, and Texas common law of fraud, public nuisance, and restitution.[2]  CWA and KBR move to dismiss all of Celanese's causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6).  CWA also moves to dismiss Celanese's claims under Federal Rule of Civil Procedure 12(b)(1).

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(1)

---

[2]    After the pending motions were filed, the court granted Celanese leave to file a First Amended Complaint (Dkt. 38) naming Martin K. Eby Corporation as a defendant.  The First Amended Complaint does not assert a cause of action for fraudulent concealment and negligence against any defendant.  Therefore, that claim has been voluntarily dismissed and CWA's and KBR's motions to dismiss that claim are denied as moot.

CWA's motion based on sovereign immunity from suit is a challenge to the court's subject matter jurisdiction. *Warnock v. Pecos Cty., Texas*, 88 F.3d 341, 343 (5th Cir. 1996). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id.* The burden of establishing subject matter jurisdiction is on the party invoking the court's jurisdiction. *Hartford Ins. Group v. Lou-Con, Inc.*, 293 F.3d 908, 910 (5th Cir. 2002). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998).

**B.      Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004) (citing *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)). The complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts taken as true. *Id.* A claim may only be dismissed if the plaintiff is not entitled to relief under any set of facts or any possible theory of recovery that he could prove consistent with the

allegations in his complaint.  *Id.* (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

### III.   CWA'S MOTION TO DISMISS

#### A.   Sovereign Immunity under Texas Law

Texas common law of sovereign immunity shields the state of Texas and its governmental units from lawsuits for damages unless the immunity has been waived or the state entity has consented to suit.  *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694-95 (Tex. 2003).  Celanese does not argue that CWA is not a governmental unit for state law sovereign immunity purposes, but contends that the state waived sovereign immunity in the SWDA.  Celanese also argues that Texas courts recognize an exception to sovereign immunity for a claim of public nuisance that rises to the level of a constitutional taking.[3]

##### 1.   SWDA

The SWDA provides:

> A person who conducts a removal or remedial action that is approved by the commission and is necessary to address a release or threatened release may bring suit in a district court to recover the reasonable and necessary costs of that action and other costs as the court, in its discretion, considers reasonable. This right is in addition to the right to file an action for contribution, indemnity, or both in an appeal proceeding or in an action brought by the attorney general.

---

[3]   Celanese did not respond either in its briefing or at the January 12 hearing to CWA's argument that it has immunity from Celanese's fraud claim .  The Texas Tort Claims Act does not waive state immunity for intentional torts such as fraud. TEX. CIV. PRAC. & REM. CODE § 101.057(2);  *Ethio Express Shuttle Serv. v. City of Houston*, 164 S.W.3d 751, 758 (Tex. App. – Houston [14th Dist.] 2005, no pet.).  Therefore, CWA's motion to dismiss Celanese's fraud claim is granted.

TEX. HEALTH & SAFETY CODE § 361.344.  The SWDA creates liability for persons responsible for solid waste as follows:

> (a)  Unless otherwise defined in applicable statues and rules, a person is responsible for solid waste if the person:
>> (1)  is the owner or operator of a solid waste facility;
>> (2)  owned or operated a solid waste facility at the time of processing, storage, or disposal of any solid waste;
>> (3)  by contract, agreement, or otherwise, arranged to process, store, or dispose of, or arranged with a transporter for transport to process, store, or dispose of, solid waste owned or possessed by the person, by any other person or entity at:
>>> (A) the solid waste facility owned or operated by another person or entity that contains the solid waste; or
>>> (B) the site to which the solid waste was transported that contains the solid waste; or
>> (4)  accepts or accepted any solid waste for transport to a solid waste facility or site selected by the person.

*Id.* § 361.271.  "Person" is  defined in the SWDA as "an individual, corporation, organization, *government or governmental subdivision or agency*, business trust, partnership, association, or any other legal entity."  TEX. HEALTH & SAFETY CODE § 361.003(23) (emphasis added).

Celanese argues that the legislature clearly and unambiguously expressed its intent to waive sovereign immunity by including governmental entities in the definition of "person" in the SWDA.  Because of this definition, the SWDA expressly makes a governmental entity that fits one of the four categories set out in § 361.271 "a person responsible for solid waste" that may be sued under § 361.

344.  Celanese bolsters this argument by reference to § 361.271(g), which provides:

(g)  A port authority or navigation district created under Section 59, Article XVI, or Section 52, Article III, Texas Constitution, is not a person responsible under this chapter for the release or threatened release of hazardous waste from a facility or at a site solely for its activities related to construction or maintenance of waterways to facilitate navigation if, in performing those activities:

> (1)  the port authority or navigation district is acting by virtue of the authority's or district's function as sovereign;
>
> (2)  the port authority or navigation district requires that dredged materials be sampled and analyzed before placement or storage of those materials on land or submerged land; and
>
> (3)  the port authority or navigation district, after exercising due diligence, does not accept dredged materials that are hazardous waste.

If the legislature did not intend to waive sovereign immunity for suits under the SWDA, argues Celanese, then § 361.271(g) would be superfluous because port authorities and navigation districts are governmental units that enjoy the protection of sovereign immunity.

"In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."  Tex. Gov't Code § 311.034.  In *Wichita Falls*, the Texas Supreme Court identified several aids to assist courts in determining whether the Legislature has clearly and unambiguously waived sovereign immunity in the absence of explicit language in the statute.  First, while the statute need not be "a model of perfect clarity," the waiver must be beyond doubt, such as when a provision would be meaningless otherwise.  Second, ambiguities are resolved in favor of retaining immunity.  Third, if the Legislature required the state to be joined in a lawsuit for which immunity would otherwise attach, immunity has been waived.  Fourth, it is often the case that

where the Legislature has explicitly waived immunity, it has also enacted simultaneous measures to insulate public resources from judgment. *Wichita Falls*, 106 S.W.3d at 697-98.

The court used these aids in *Wichita Falls* to analyze the Patient's Bill of Rights, TEX. HEALTH & SAFETY CODE § 321.003.  The Patient's Bill of Rights permits a person harmed by a mental health facility's violation of the statute to sue for injunctive relief, damages, or both. *Id.* at 698.  The Patient's Bill of Rights does not contain a definition of "mental health facility," but incorporates the definition contained in TEX. HEALTH & SAFETY CODE § 571.003, enacted two years prior to the Patient's Bill of Rights.  Section 571.003 defines "mental health facility," in part, as "an inpatient or outpatient mental health facility operated by the department, a federal agency, a political subdivision, or any person." *Wichita Falls* holds that "while the definition of 'mental health facility' includes state-operated facilities, it does not contain the sort of explicit language the Legislature generally uses to confirm its intent to waive sovereign immunity." *Id.* at 699.  The court observed that § 321.003 is not rendered meaningless absent a waiver, because it still creates a meaningful cause of action against private facilities.  Further, the court noted that the definition contained in § 571.003 also includes federal facilities, and the state legislature has no authority to waive federal immunity.  Therefore, the Legislature could not have intended a wholesale incorporation of § 571.003.  Finally, the court noted that the Patients Bill of Rights contains no damages cap, and thus would subject the state to indeterminate damage awards.  That fact "reinforce[d]

[the court's] skepticism  that the Legislature intended to waive sovereign immunity," although the court recognized that fact was not dispositive.  *Id.* at 702.

The SWDA statutory scheme is distinct from the Patient's Bill of Rights addressed in *Wichita Falls.*  The government-inclusive definition of "person" is contained in the SWDA itself, not incorporated in part from a prior legislative enactment, leaving no room for skepticism as to the legislative intent.  Further, absent a waiver, § 261.371(g) would be rendered meaningless.  The court should "not read statutory language to be pointless if it is reasonably susceptible or another construction.  If a statute leaves no reasonable doubt of its purpose, we will not require perfect clarity, even in determining whether governmental immunity has been waived."  *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 3 (Tex. 2000).  Finally, there does not appear to be any provision in the SWDA limiting damages against the state, but as the court acknowledged in *Wichita Falls,* that fact is not dispositive. 106 S.W.3d at 701-02.  The concern in *Wichita Falls* was that the statute allowed for recovery of exemplary damages, a concern not raised by the SWDA.  *See* TEX. HEALTH & SAFETY CODE § 361.344(a).

Here, analysis of the immunity issue using the aids suggested in *Wichita Falls* yields a contrary result.  The SWDA clearly and unambiguously expresses the Legislature's intent to waive state sovereign immunity.  CWA's motion to dismiss this claim is denied.

## 2.     Public Nuisance

A plaintiff's property may not be "taken, damaged or destroyed for or applied to public use without adequate compensation being made." TEX. CONST. art. I, § 17. Texas courts recognize a waiver of sovereign immunity for public nuisance where a person's property is taken, damaged or destroyed as a result of either the construction of public works or their subsequent maintenance and operation. *City of Tyler v. Likes*, 962 S.W.2d 489, 504-05 (Tex. 1997). However, the injury to property must be the result of intentional acts, "mere negligence which eventually contributes to the destruction of property is not a taking." *Id.* at 505; *Kerr v. Texas Dep't of Transp.*, 45 S.W.3d 248, 251-52 (Tex. App.–Houston [1st Dist.], 2001, no pet.). A nuisance rises to the level of a constitutional taking when the government (1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain to result from an authorized government action – that is, that damage is "necessarily an incident to, or necessarily a consequential result of the government's action." *City of Dallas v. Jennings*, 142 S.W.3d 310, 313 n.2 (Tex. 2004).

Celanese argues that its allegations that CWA knew that the specific act of covering up the damage to the pipeline would result in the identifiable harm of a release of hazardous substances into areas common to the general public state a claim for a constitutional taking. Celanese overstates the allegations in its complaint. Celanese alleges that CWA knew about the damage to the pipeline and intentionally covered it up, but the current complaint contains no allegation that CWA knew the release of a hazardous substances was substantially certain

9

to result from its actions.[4]  In addition, as it stands Celanese asserts a general tort claim of public nuisance against CWA and the other, non-governmental, defendants.  Only in response to CWA's motion to dismiss the public nuisance claim based on sovereign immunity has Celanese characterized its claim as one of constitutional taking, a phrase that does not appear in the current complaint.

CWA's motion to dismiss the public nuisance claim is granted.  However, CWA will be allowed to amend its complaint to assert a claim against CWA for a constitutional taking under the standards outlined by the Texas Supreme Court in *City of Dallas v. Jennings*, 142 S.W.3d at 314, if it can do so in good faith.

### B..    Eleventh Amendment Immunity from CERLCA Claims

Eleventh Amendment immunity protects arms of the state from suit in federal court unless the state's immunity has been abrogated by Congress pursuant to the 14th Amendment, or the state has waived its immunity by expressing its intent to do so in unmistakably clear language.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 239-40 (1985).  CWA argues it is an arm of the state under the 5th Circuit's six-factor test for Eleventh Amendment immunity.[5]  The six factors are:  1) whether the state statutes and case

---

[4]    *See* First Amended Complaint (Dkt. 38), ¶¶ 32-38.

[5]    CWA also asserts that CERCLA does not contain a valid waiver of Eleventh Amendment immunity.  The Supreme Court ruled in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 59, 65-66 (1996) that Congress could abrogate the states' Eleventh Amendment immunity only when acting under the power vested in it by Section 5 of the Fourteenth Amendment. CERCLA was enacted pursuant to the Commerce Clause, not the 14th Amendment.
(continued...)

law view the agency as an arm of the state; 2) the source of the entity's funding; 3) the degree

of local autonomy; 4) whether the entity is concerned primarily with local, as opposed to

statewide problems; 5) whether the entity has the right to hold and use property. *United*

*States ex rel. Barron v. Deloitte & Touch, LLP*, 381 F.3d 438, 440 (5th Cir. 2004).  No one

factor is dispositive.

**_State Statutes and Cases_**:  Texas courts have not considered whether CWA is an arm

of the state for immunity purposes.  The statutory scheme pursuant to which CWA was

created indicates that the Texas Legislature views CWA as an arm of the state.  CWA was

organized under Article XVI, Section 59 of the Texas Constitution, which states that the

conservation and development of the state's natural resources are public rights and duties,

and provides for the creation of conservation and reclamation districts to achieve the

purposes of § 59.  The districts "shall be governmental agencies and bodies politic and

corporate with such powers of government and with the authority to exercise such rights,

privileges and functions concerning the subject matter of this amendment as may be

conferred by law."  TEX. CONST. art. I, § 59(b).

The purpose of the CWA is to "conserve, store, transport, treat and purify, distribute,

sell and deliver water, . . ." and it may "purchase, construct or lease all property, works and

---

[5]        (...continued)
*Burnetter v. Carothers*, 192 F.3d 52, 59 (2d Cir. 1999).  Thus, the provisions of CERCLA
purporting to divest the states of immunity are unenforceable. *Id.*  Celanese does not contest
CWA's legal analysis on this point.  Thus, the only Eleventh Amendment issue before the
court is whether CWA is an arm of the state.

facilities . . . necessary for such purposes." Act of May 17, 1967, 60th Leg., R.S., ch. 601, § 3, 1967 Tex. Gen. Laws 1381. The Legislature expressly declared in the enabling legislation that creation of the CWA was "essential to the accomplishment of the purposes of Article XVI Section 59 of the Texas Constitution." *Id.* § 8.

***Source of Funding***: CWA is funded by its ratepayers (not the state) and is financially self-sufficient.[6] This factor is of considerable importance, but is not dispositive. *Southwestern Bell Tel. Co. v. City of El Paso*, 243 F.3d 936, 938 (5th Cir. 2001); *McDonald v. Board of Miss. Levee Comm'rs*, 832 F.2d 901, 907-08 (5th Cir. 1987) (holding that the degree of local autonomy is another important factor, and weighing all factors in reaching its decision to deny immunity).

Celanese's citation of *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994) for the proposition that the funding factor[7] is determinative rests on an overly expansive reading of that case. The *Hess* Court began its analysis by explaining that the Eleventh Amendment responded to state fears that the federal courts would force them to pay their Revolutionary War debts, but "[m]ore pervasively, current Eleventh Amendment jurisprudence emphasizes

---

[6] CWA's motion, at 15.

[7] Actually, *Hess* referred to this as the "state treasury" criterion, emphasizing that the proper focus is not on revenue or profit, but rather liability for debt: "If the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise? 513 U.S. at 51. CWA's motion concedes that it is "essentially funded by its rate-payers," but does not explicitly answer the debt liability question posed in *Hess*. However, the parties appear to assume that any judgment would not be payable from the state treasury, and so the court joins in that assumption for purposes of this opinion.

the integrity retained by each State in our federal system." 513 U.S. at 39. The Court then pointed out that bi-state entities created by compact, like the railway at issue in that case, are not subject to the unilateral control of any one state, and suits against them do not interfere with the integrity of any state. *Id.* at 40-44. In light of this, the Court set out a general approach for analyzing such entities under which it is presumed that the entity does not qualify for Eleventh Amendment immunity "unless there is good reason to believe that the States structured the new agency to enable it to enjoy the special constitutional protection of the States themselves, and that Congress concurred in that purpose." *Id.* at 43-44. It was in this context that the Court went on to hold that the financially independent bi-state railway was not entitled to Eleventh Amendment immunity. The *Hess* decision does not establish a blanket rule that a financially self-sufficient entity cannot qualify for Eleventh Amendment immunity.

*__Local Autonomy__*: CWA is governed by a board of seven directors, three of whom are appointed by the Governor with advice and consent of the Texas Senate, making CWA subject to a moderate degree of state control. Act of May 17, 1967, 60th Leg., R.S., ch. 601, § 5, 1967 Tex. Gen. Laws 1381. In addition, CWA is subject to the continuing right of supervision of the state. *Id.*, § 8. By contrast, the Levee Board at issue in *McDonald* consisted of commissioners from the counties within the levee district, and residents of the counties elected the commissioners. This was an important factor in the Fifth Circuit's ruling

13

that the Levee Board did not enjoy Eleventh Amendment immunity.  *McDonald*, 832 F.2d
at 907.

    ***Local versus Statewide Interests***:  Water and soil conservation is undeniably a
statewide concern.  *See Bennett v. Brown Cty. Water Improv. Dist.*, 272 S.W.2d 498, 502-03
(Tex. 1954).  While CWA is primarily concerned with protecting the water supply within its
district, this is part of a larger statewide concern.  The fact that the state has divided itself
into districts for the purpose of addressing its concerns does not make the need for water and
soil conservation any less a statewide issue.  *See Clark v. Tarrant Cty.*, 798 F.2d 736, 745
(5th Cir. 1986) (holding that probation department was arm of the state and that "dividing
the responsibilities into . . . districts is merely an administrative tool for handling a statewide,
state program.").  The statewide nature of CWA's interests is further evidenced by the facts
that its boundaries include multiple political subdivisions, and it is authorized to operate
outside of its boundaries.  Act of May 17, 1967, 60th Leg., R.S., ch. 601, §§ 2, 3, 1967 Tex.
Gen. Laws 1381.

    ***Right to Hold and Use Property***:  CWA does not dispute that it is authorized to hold
and use property in its own name and may sue and be sued in its own name.[8]

    Having considered the relevant factors, the court concludes that CWA is an arm of the
state protected by the Eleventh Amendment.  Although CWA is funded by ratepayers and
holds property in its own name, those facts do not outweigh the other factors, which give the

---

[8]    CWA's motion, at 15.

overwhelming impression that the state intended CWA to share the state's immunity. Therefore, CWA's motion to dismiss Celanese's CERCLA claim against it is granted.

## IV.   CWA'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

CWA asserts that Celanese is a potentially responsible party that cannot bring a  cost recovery or contribution cause of action under CERCLA § 107, and that CWA is not a potentially responsible party under CERCLA § 107(a)(3), which creates a cause of action against the "arranger" of hazardous waste disposal.[9]  Because the court has determined that CWA is entitled to Eleventh Amendment immunity from suit under CERCLA, the court need not address CWA's Rule 12(b)(6) challenges to Celanese's CERCLA claim.

## V.   KBR'S MOTION TO DISMISS

---

[9]     CWA's argument that Celanese, as a potentially responsible party, cannot bring a § 107(a) action is based on the ruling in *Aviall Serv. Inc. v. Cooper Indus., LLC*, 2006 WL 2263305, *10 (N.D. Tex. August 8, 2006) (*Aviall II*).  CWA's position is also supported by the Third Circuit's decision in *E.I. DuPont De Nemours and Co. v. U.S.*, 460 F.3d 513 (3d Cir. 2006), and the recent Southern District of Texas decision  *Differential Development-1994, LTD v. Harkrider Distributing Co.*, Civil Action No. H-05-3375, 2007 WL 87661 (S.D. Tex. Jan. 9, 2007) (J. Rosenthal).  The Eastern District of Texas and the Second, Eighth, and, most recently, Seventh Circuits have ruled to the contrary.  *Vine Street LLC v. Keeling*, 362 F. Supp. 2d 754 (E.D. Tex. 2005); *Consolidated Edison Co. of New York v. UGI Utilities, Inc.*, 423 F.3d 90 (2d Cir. 2005); *Atlantic Research Corp. v. United States*, 459 F.3d 827 (8th Cir. 2006); *Metropolitan Water Reclamation District of Greater Chicago v. North American Galvanizing & Coatings, Inc.*, Case No. 05-3299, 2007 WL 102979 (7th Cir. Jan. 17, 2007). The matter is currently before the Fifth Circuit on appeal from *Aviall II,* and an appeal upon entry of a final judgment in *Vine Street* is likely.  The United States Supreme Court recently granted certiorari in *United States v. Atlantic Research Corp.*, No. 06-562, 2007 U.S. LEXIS 1163 (Jan. 19, 2007), to resolve the circuit split, and petitions for writ of certiorari in the Second and Third Circuit cases are currently pending before the Supreme Court.  This court need not enter the fray on this issue, at least at this time, because KBR did not raise this § 107(a) issue in its motion to dismiss.

KBR contends that is not an "arranger" subject to liability under CERCLA § 107(a)(3) or the SWDA.  KBR also challenges each of Celanese's state common law claims against it.

## A.    CERCLA § 107(a)(3): "Arranger" Liability

CERCLA imposes liability for the costs of cleaning up hazardous waste on (1) the owner and operator of a vessel or facility; (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of; (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance.  42 U.S.C. § 9607(a)(1)-(4).

CERCLA does not define "arrange" or "arranger."  The Fifth Circuit has rejected a bright line test for determining arranger status, and has stated that "just as a nexus must exist for operator liability to attach, there must also be a nexus that allows one to be labeled an arranger."  *Geraghty and Miller, Inc. v. Conoco, Inc.*, 234 F.3d 917, 929 (5th Cir. 2000).  To determine arranger status, the court must engage in a case-by-case analysis considering a number of factors, no one of which is dispositive.  *Sea Lion, Inc. v. Wall Chemical Corp.*,

974 F. Supp. 589, 595 (S.D. Tex. 1996).   Examples of such factors include whether the alleged arranger had some actual involvement in the decision to dispose of the waste, or had an obligation to dispose of the waste, engaged in a transaction for the purpose of waste disposal, owned or possessed the waste, or controlled the disposal of waste regardless of whether it owned or possessed it.   *Id.*   The courts ultimate decision must be based on the totality of the circumstances.   *Geraghty and Miller*, 234 F.3d at 929.   Knowledge that a process inherently results in the disposal of hazardous chemicals can give rise to arranger liability.   *Vine Street LLC*, 362 F. Supp. 2d at 760 (citing *United States v. Aceto Agric. Chemicals Corp.*, 872 F.2d 1373, 1379-81 (8th Cir. 1989)).

Celanese alleges that KBR "by contract, agreement, or otherwise, disposed of or arranged for disposal of hazardous substances at the Site."[10]   Celanese alleges that KBR knew about the damage to the methanol pipeline, and intentionally covered it up by backfilling soil over the damaged pipeline.   Celanese argues that it is well-known in the industry that the type of damage inflicted on the methanol pipeline can lead to accelerated corrosion and if not corrected would lead to failure of the pipe at the point of the damage.[11]

---

[10]      First Amended Complaint, ¶ 50.

[11]      Celanese states in briefing that its complaint alleges that "KBR knew that a release of hazardous substances was a natural and logical consequence of the damage it had caused, yet it proceeded to cover up the damage."   Celanese did not provide a cite to the quoted language, and the court has not found it in the First Amended Complaint. The court has not relied upon that allegation in making its ruling.

Therefore, Celanese argues, KBR decided to dispose of the hazardous substance when it decided to hide the damage to the pipe.

Celanese has alleged "arranger" liability against KBR.  The cases cited above make clear that whether one is an "arranger" must be decided on a case-by-case basis based on the particular facts of the case.  The court is not concerned at this stage whether Celanese will be able to prove facts to support arranger liability; it has clearly pled such a claim under federal notice pleading standards.  The court is unaware of any authority requiring a heightened degree of fact pleading in CERCLA cases.  At this stage of the proceedings KBR's motion to dismiss the CERCLA claim is denied.

### B.    SWDA

Arranger liability under the SWDA is analyzed according to the same principles as under CERCLA.  *R.R. Street & Co. v. Pilgrim Enter. Inc.*, 166 S.W.3d 232 (Tex. 2005).  Therefore, the court's analysis and ruling above regarding CERCLA also apply to Celanese's SWDA claim.

### C.    Fraud

KBR moves to dismiss Celanese's fraud claim on several grounds.  KBR contends the fraud claim does not comply with Federal Rule of Civil Procedure 9(b), which provides:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  The Fifth Circuit interprets Rule 9(b) to require a plaintiff to plead the "who, what, when, where, and how" of the alleged fraud.  *United States ex rel. Doe v.*

*Dow Chemical Co.*, 343 F.3d 325, 328 (5th Cir. 2003).  To the extent Celanese's claim is based on KBR's silence, KBR contends that it did not owe a duty of disclosure to Celanese. KBR also argues that Celanese could not justifiably rely on KBR's alleged misrepresentation of the condition of the pipeline because Celanese has an independent duty to inspect and maintain its pipeline.

The elements of a cause of action for fraud are:  (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly without regard to its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; (4) the plaintiff actually and justifiably relied upon the false representation; and (5) the plaintiff suffered injury.  *Ernst & Young v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

A failure to disclose information constitutes fraud where the particular circumstances impose a duty to disclose the information.  *Bradford v. Vento*, 48 S.W.3d 749, 754-55 (Tex. 2001); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997); *Bright v. Addison*, 171 S.W.3d 588, 599 (Tex. App. – Dallas, 2005, pet. filed).  Whether or not such a duty exists is a question of law.  *Bradford*, 187 S.W.3d at 755.  A duty to disclose may arise in four situations: (1) where there is a special or fiduciary relationship; (2) where one voluntarily discloses partial information, but fails to disclose the whole truth; (3) where one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue; and (4) where one makes a partial disclosure and

conveys a false impression. *Columbia/HCA Healthcare Corp. v. Cottey*, 72 S.W.3d 735, 744

(Tex. App. – Waco, 2002, no pet.).  Where there is a duty to disclose, fraud occurs if:  (1) a

party conceals or fails to disclose a material fact within the knowledge of that party; (2) the

party knows that the other party is ignorant of the fact and does not have an equal opportunity

to discover the truth; (3) the party intends to induce the other party to take some action by

concealing or failing to disclose the fact, and (4) the other party suffers injury as a result of

acting without knowledge of the undisclosed fact.  *Daugherty v. Jacobs*, 187 S.W.3d 607,

618 n.3 (Tex. App. – 2006, n.p.h.) (citing *Custom Leasing, Inc. v. Texas Bank & Trust Co.*

*of Dallas*, 516 S.W.2d 138, 142 (Tex. 1974).[12]

---

[12]   Citing *New Process Steel Corp. v. Steel Corp. of Texas, Inc.*, 703 S.W.2d 209 (Tex. App. –
Houston [1st Dist.] 1986, writ ref'd n.r.e.) and its progeny, Celanese and KBR conflate the
distinct questions of duty and the elements of fraud by nondisclosure.  *New Process Steel*
addressed the sufficiency of a jury instruction on fraud that included the following language:
"A 'misrepresentation' may consist of the concealment of a material fact when there is a duty
to speak.  The duty to speak or to disclose arises when one party knows that the other party
is relying on the counceled [sic] fact, provided that he knows the relying party is ignorant
of the facts and does not have an equal opportunity to discover the truth."  703 S.W.2d at
214.  However, the quoted language was not challenged on appeal; the issue before the court
in *New Process Steel* was whether the jury was correctly instructed concerning whether the
defendant intended to perform at the time he entered an agreement to perform a future action.
*Id.*  Thus, *New Process Steel* is not authoritative on the issue of when a duty to speak arises.
A more accurate statement of Texas law, based on *Bradford* and *Schlumberger Tech. Corp.
v. Swanson*, 959 S.W.2d 171 (Tex. 1997), can be found in *7979 Airport Garage, L.L.C. v.
Dollar Rent a Car Sys., Inc.*, No. 14-05-00484-CV, 2006 WL 2805556, *16 n.25 (Tex. App.
– Houston [14th Dist.], Oct. 3, 2006):

> Elements of fraud by nondisclosure are:  (1) the defendant failed to
> disclose facts to the plaintiff; (2) the defendant had a duty to disclose
> those facts; (3) the facts were material; (4) the defendant knew the
> plaintiff was ignorant of the facts and the plaintiff did not have an
> equal opportunity to discover the facts; (5) the defendant was
> deliberately silent when it had a duty to speak; (6) by failing to

(continued...)

***Rule 9(b)***:  Celanese has alleged that KBR filled in the ditch even though it knew about the damage to the pipe; KBR was onsite and knew about the damage when it occurred; KBR intended to induce Celanese to continue using the pipeline and to undertake any cleanup resulting from a leak; and Celanese actually and justifiably relied on that representation.  It is clear that Celanese is alleging that KBR (who) knew about the damage to the methanol pipeline (what) during the 1978 installation of CWA's 30" pipeline and backfilled, or allowed to be backfilled, the ditch without informing Celanese of the damage, thereby inducing Celanese to continue operating its pipeline thinking it was in sound condition (when, where, and how).   Celanese's allegations are sufficient for purposes of Rule 9(b) to state a claim for fraud by misrepresentation or nondisclosure.

***Reliance***:  Reliance is an element of fraud by affirmative misrepresentation or nondisclosure. *Schlumberger*, 959 S.W.2d 181.  Celanese alleges that it "relied on Defendants' knowing, intentional, and/or reckless acts and omissions to continue to operate the pipeline normally and without interruption for repair or replacement."[13]  Reliance is ordinarily a question for the fact-finder. *Jones v. Ray Ins. Agency*, 59 S.W.3d 739, 754 (Tex. App. – Corpus Christi 2001, pet. denied); *1001 McKinney Ltd. v. Credit Suisse First Boston*

---

[12]      (...continued)
disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (7) the plaintiff relied on the defendant's nondisclosure; (8) the defendant was injured as a result of acting without that knowledge.

[13]      First Amended Complaint (Dkt. 38), ¶ 84.

*Mortgage Capital*, 192 S.W.3d 20, 30 (Tex. App. – Houston [14th Dist.] 2005, pet. denied). Thus, while reliance, or lack thereof, may be established as a matter of law based on the evidence of record on summary judgment, it is not a proper matter for dismissal on the pleadings in this case.  Whether facts will show that Celanese had a duty to inspect its pipeline and should have independently discovered the damage prior to a leak occurring, and therefore did not justifiably rely on KBR's hiding the damage, is not properly before the court on this motion to dismiss.

KBR's motion to dismiss Celanese's fraud claim is denied.

### D.    Public Nuisance

KBR argues that Celanese's public nuisance claim is barred by the two-year statute of limitations.  Resolution of this issue depends on whether Celanese has alleged a permanent or temporary nuisance, under the standard of *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264 (Tex. 2004).

> A nuisance should be deemed temporary only if it is so irregular or intermittent over the period leading up to filing and trial that future injury cannot be estimated with reasonable certainty.  Conversely, a nuisance should be deemed permanent if it is sufficiently constant or regular (no matter how long between occurrences) that future impact can be reasonable evaluated.

*Id.* at 281. Accrual of a nuisance cause of action hinges on this distinction:  "A permanent nuisance claim accrues when injury *first* occurs or is discovered; a temporary nuisance claim accrues *anew* upon each injury."  *Id.* at 270 (emphasis in original).

The court cannot determine from the bare allegations of the complaint whether Celanese has allegedly suffered a temporary or permanent injury.  While accrual of a cause of action for limitations purposes is a question of law, a case may involve material factual disputes about the frequency, duration, and extent of nuisance conditions.  *Id.* at 274-75.  The complaint does not allege whether the leak has been abated, whether the environmental damage caused by the leak has been remediated, is being remediated, or will recur.  "[A]bating a permanent nuisance will not always render its effects temporary.  For example, in some cases, an abatement of the source of a permanent nuisance will not put an end to the injury, and thus the nuisance will still be considered permanent." *Id.* at 286.  The court is also unable to determine from the complaint alone the extent of future harm, if any, from the environmental damage.  For these reasons, determination of KBR's motion to dismiss Celanese's public nuisance claim for damages based on the statute of limitations must await a motion for summary judgment.[14]

However, Celanese's public nuisance claim is deficient for another reason.  Celanese has not alleged the "special injury" element of a public nuisance claim.  While economic injury may constitute a special injury in some circumstances, Celanese must allege that it was injured while exercising a right common to the public.  *See* RESTATEMENT (SECOND) TORTS, § 821(c)(1).  Celanese does not allege that the environmental damage resulting from

---

[14]    The two-year statute of limitations does not apply to an action to abate a nuisance. *Jamail v. Stoneledge Condominium Owners Ass'n*, 970 S.W.2d 673 (Tex. App.– Austin 1998, n.p.h.). To the extent Celanese is seeking an injunction to abate the nuisance, such claim is not time-barred.

the leak injured its right to exercise a public right, such as the enjoyment of clean air or

water, as opposed to its commercial right to use its pipeline. *See Philadelphia Elec. Co. v.

Hercules, Inc.*, 762 F.2d 303, 316 (3d Cir. 1985). Thus, KBR's motion to dismiss Celanese's

public nuisance claim is granted, but Celanese will be granted leave to amend is complaint

to allege a special injury, if appropriate.[15]

### E.    Restitution

Celanese characterizes its restitution claim as an equitable claim in the nature of unjust

enrichment. Celanese's restitution claim is based on its position that the defendants wrongly

received a benefit which it was unconscionable for them to retain, *i.e.*, Celanese performed

the job of cleaning up the site, even though that duty belonged to CWA and KBR. This

argument does not save Celanese's claim. Restitution and unjust enrichment are remedies,

not causes of action. *City of Harker Heights v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313,

317 (Tex. App.– Austin 1992, no writ); *Walker v. Cotter Prop., Inc. L.L.*, 181 S.W.3d 895,

900 (Tex. App. – Dallas 2006, n.p.h.); *Friberg-Cooper Water Supply Corp. v. Elledge*, 197

S.W.3d 826, 832 (Tex. App. – Fort Worth 2006, n.p.h.).

> Unjust enrichment, itself, is not an independent cause of action but rather
> 'characterizes the result of a failure to make restitution of benefits either
> wrongfully or passively received under circumstances that give rise to an
> implied or quasi-contractual obligation to repay.' The doctrine applies the

---

[15]    It is not clear to the court whether this "special injury" is an element of a constitutional
taking claim against a state governmental unit, or whether the two-year statute of limitations
for public nuisance applies to such a claim. These are issues Celanese must consider in
deciding whether it is appropriate to amend its complaint to assert a constitutional taking
claim against CWA.

> principles of restitution to disputes where there is no actual contract, based on the equitable principle that one who receives benefits which would be unjust for him to retain ought to make restitution.

*Friberg*, 197 S.W.3d at 832.  Thus, in order to state a claim, Celanese must be able to plead that defendants received benefits under circumstances that give rise to an implied or quasi-contract.

"A contract implied in law, or a quasi-contract, is distinguishable from a true contract because a quasi-contract is a legal fiction, an obligation imposed by law regardless of any actual agreement between the parties."  *Walker*, 181 S.W.3d at 900.  Restitution is an appropriate remedy for breach of an implied, or quasi-contract where an agreement contemplated between parties is "unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons."  *Harker Heights*, 830 S.W.2d at 319. The typical cause of action based on quasi-contract is a claim for money had and received. *Friberg-Cooper*, 197 S.W.3d at 831-32; *Doss v. Homecomings Fin. Network*, ___ S.W.3d ____, 2006 WL 3093631 *3 (Tex. App. – Corpus Christi Nov. 2, 2006, n.p.h.).  The facts alleged here do not fit that pattern, and Celanese has cited no Texas case recognizing such a claim in the context of environmental law.  Given the presence of both federal and state legislative schemes for remediating environmental damage, the court is reluctant to expand common law remedies into this arena.

KBR's motion to dismiss Celanese's restitution claim is granted.  Because under the facts alleged Celanese cannot support a claim based on implied or quasi-contract, leave to amend will not be granted.

## VI.  CONCLUSION AND ORDER

For the reasons discussed above, it is

ORDERED that CWA's motion to dismiss is granted in part and denied in part. Specifically, Celanese's claims against CWA under CERLCA, and its state law claims for public nuisance, fraud, and restitution, are dismissed.  Celanese's claim against CWA under the SWDA remains.  It is further

ORDERED that Celanese is granted leave to file an amended complaint within 20 days to assert a constitutional taking claim against CWA, if it can do so in good faith.

Also for the reasons discussed above, it is

ORDERED that KBR's motion to dismiss is granted in part and denied in part. Specifically, Celanese's claims against KBR for public nuisance and restitution are dismissed.  Celanese's claims against KBR under CERCLA, the SWDA and common law fraud remain.  It is further

ORDERED that Celanese is granted leave to amend its complaint within 20 days to replead its public nuisance claim against KBR, if it can do so in good faith.

Signed at Houston, Texas on February 9, 2007.

Stephen Wm Smith
United States Magistrate Judge