UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CELANESE CORPORATION, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| vs. § | CIVIL ACTION NO. H-06-2265 |
| § | |
| COASTAL WATER AUTHORITY, § | |
| KELLOGG, BROWN & ROOT, INC., AND § | |
| MARTIN K. EBY CONSTRUCTION CO., INC., § | |
| § | |
| *Defendants*. § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff Celanese Corporation sued defendants[1] Kellogg, Brown & Root, Inc. and Martin K. Eby Construction Co., Inc. to recover environmental clean-up costs under the Texas Solid Waste Disposal Act, TEX. HEALTH & SAFETY CODE § 361.344 (SWDA) and the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9607 (CERCLA).

A jury trial was conducted March 9-20, 2009. The jury returned a verdict on the SWDA claim, and its findings of fact are advisory only with respect to the CERCLA claim. The court now makes the following findings of fact and conclusions of law. Any finding of fact that should be a conclusion of law is deemed a conclusion of law, and vice versa.

---

[1] All claims against a third defendant, Coastal Water Authority, were dismissed by orders dated February 9, 2007 (Dkt. 45) and July 2, 2008 (Dkt. 108).

## Findings of Fact

1. Plaintiff Celanese Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Dallas, Texas.

2. Defendant Kellogg, Brown & Root, LLC (Brown & Root) is the successor to Brown & Root, Inc. and is a company organized and existing under the laws of the State of Delaware, with its principal place of business in Houston, Texas.

3. Defendant Martin K. Eby Construction Co., Inc. (Eby) is the successor to Chisholm Trail Construction Co., Inc. and is a corporation organized and existing under the laws of the State of Kansas, with its principal place of business in Wichita, Kansas.

**Spill Site**

4. The site of the methanol spill generating this lawsuit is located approximately ½-mile southeast of the intersection of State Highway 146 and Shoreacres Boulevard, near Bayport Industrial Complex in eastern Harris County, Texas. The property is bounded by the Taylor Bayou small boat channel to the west and by a marine terminal owned by LBC-Houston, LP to the east (hereafter Site).

5. The methanol leaked from a 10" pipeline installed by Celanese in 1971. This three-mile long pipeline originally ran between the Celanese Clear Lake plant and a barge terminal on Galveston Bay, but was partially rerouted in 1974 to a Bayport ship terminal. From at least 1974 to the present, the methanol pipeline passed through corridors and easements belonging to Friendswood Development Corp. and managed by Exxon Pipeline Company.

6.  From 1971 to the time of trial, Celanese has been the sole owner and operator of the methanol pipeline.

**CWA Water Pipeline Project**

7.  In 1979, Coastal Water Authority (CWA), a state agency that supplies industries with water, built a 30" underground water pipeline to serve Bayport industrial plants. The CWA waterline crossed underground pipelines owned by many different companies, including Celanese, in many places.

8.  The Site where the leak occurred is near one of the intersections of the CWA water pipeline and the methanol pipeline.

9.  CWA hired Brown & Root to provide engineering services on the water pipeline project, to assist with the preparation of a bid package for prospective contractors, and to inspect the work of the successful bidder for CWA.

10. Brown & Root recommended acceptance of Eby's bid as construction contractor for installation of the CWA water pipeline.

11. Brown & Root was contractually required to observe Eby's construction of the CWA line on a daily basis, and in particular was required to inspect each section of the CWA line as it was laid. Brown & Root had contractual authority to direct Eby to stop work on the project in appropriate circumstances.

12. Eby's normal procedure was to notify pipeline owners when Eby planned an excavation in the vicinity of their pipelines. Likewise, it was Celanese's normal

practice to have a representative present when they knew anyone would be digging near its pipelines.

**Damage to the Methanol Line**

13. On April 27, 1979, Celanese received a telephone call from Eby representatives advising that the CWA water line would cross under Celanese pipelines adjacent to Hwy. 146.

14. In July 1979, Eby began excavating the Site where the CWA waterline, running east and west, was to cross under the Celanese methanol line, which ran north and south.

15. At that time, the project was a few weeks behind schedule due to unusually heavy rainfall. Eby added a second pipe laying crew, and the work was eventually completed on schedule.

16. Eby's excavation at the Site exposed only a portion of the Celanese methanol pipeline, which was approximately twelve (12) feet below ground surface.

17. During that excavation, an unknown Eby employee operating a backhoe struck and damaged the methanol pipeline.[2]

18. The dent in the methanol pipeline was approximately 10-15 feet south of the CWA water line, and approximately 8 feet above it.

19. The dented portion of the pipeline was neither exposed nor in plain view prior to backfilling.

---

[2] This finding adopts the jury's advisory answer to Question No. 1.

**Lack of Knowledge**

20.  The 1979 strike on the Celanese methanol pipeline was not contemporaneously reported or recorded by Eby, Brown & Root, Celanese, or anyone else.

21.  According to Celanese expert witness Ross Benson, who has operated heavy equipment for nearly 40 years, a backhoe operator with his level of experience knows when he hits a pipeline, as opposed to a rock or some other object.

22.  There is no evidence that the Eby employee who damaged the methanol pipeline in 1979 had Benson's level of experience operating heavy equipment.

23.  Eby operator Weldon Booker was moderately experienced on heavy equipment by 1979, but he could not always tell the difference between hitting metal or rock, and would have to probe with a shovel to discover what had been hit.

24.  Booker was not operating the backhoe when the Celanese methanol line was struck. He had previously been relieved from backhoe duty because he accidentally turned over a backhoe while working near the Taylor Bayou small boat channel.

25.  Even when Booker was the main operator of the backhoe, other members of the crew (except for laborers) would occasionally operate the machine.

26.  The Eby employee who struck the pipeline did not know what he had hit.

27.  Neither Eby nor any of its employees knew that the Celanese methanol line had been damaged by its work on the CWA line.[3]

---

[3]   The court adopts the jury's advisory answer to Question No. 2.

28. Eby's decision to backfill the excavation was made without knowledge that the Celanese methanol line had been damaged.[4]

29. Neither Brown & Root nor any of its employees knew that Eby had damaged the Celanese methanol line.[5]

30. Brown & Root's decision to allow Eby to backfill the excavation was made without knowledge that the Celanese methanol line had been damaged.[6]

**Causation of Methanol Release**

31. The release of methanol at the Site would not have occurred but for the 1979 damage to the Celanese methanol line.[7]

32. Celanese's acts or omissions in monitoring and maintaining the integrity of its methanol line did not contribute to the release in question.[8]

---

[4] The court adopts the jury's advisory answer to Question No. 4.

[5] The court adopts the jury's advisory answer to Question No. 3.

[6] The court adopts the jury's advisory answer to Question No. 5.

[7] The court adopts the jury's advisory answer to Question No. 6.

[8] The court adopts, in part, the jury's advisory finding to Question No. 9. The court declines to adopt the jury's advisory answer to Question No. 8, *i.e.*, that Celanese failed to use due care in monitoring and maintaining the integrity of the line. The defendants failed to sustain their burden of proof on that issue.

6

**Celanese Response**

33. Celanese discovered the methanol leak on October 1, 2002, when a patch of dead grass was observed at the Site. Defendants have not shown by preponderance of the evidence that Celanese acted unreasonably in failing to detect the release sooner.[9]

34. Celanese hired Benson Pipeline Maintenance to excavate down to the methanol line and find the source of the leak.

35. A CWA representative, Lee Casey, was present at the Site while Benson was excavating in the vicinity of the CWA waterline.

36. Brown & Root was notified by CWA in October 2002 of the leak, the excavation, and Celanese's intention to take steps to eliminate the release.

37. Celanese notified Eby of the leak and its efforts to eliminate the release in 2006, after it learned through discovery in this case that Eby was the contractor for installation of the CWA waterline in 1979. Neither Brown & Root nor CWA informed Celanese that Eby was the contractor prior to initiation of this lawsuit.

38. Celanese replaced the damaged portion of the pipeline, pressure-tested the repaired pipeline, and backfilled the excavation.

39. As of mid-November 2008, Celanese had removed and disposed of over 232,028 gallons of methanol from the subsurface at the Site. The exact amount of methanol that leaked from the pipe before repair is unknown.

---

[9] Respectfully, the court declines to adopt the jury's advisory answer to Question No. 10.

40. Celanese notified the National Response Center and Texas Commission on Environmental Quality (TCEQ) of its discovery of the methanol release.

41. Celanese, in accordance with TCEQ regulations known as the Texas Risk Reduction Program (TRRP), summarized its site evaluation in an Affected Property Assessment Report (APAR).

42. TCEQ approved the APAR and directed Celanese to prepare a Response Action Plan (RAP). Celanese's RAP proposed (a) establishment of a Plume Management Zone; and (b) monitored natural attenuation (MNA).

43. TCEQ approved the RAP on June 3, 2008. Once Celanese can demonstrate the effectiveness of the MNA remedy, it will submit a Response Action Completion Report.

44. Celanese has not yet received approval from TCEQ of a Response Action Completion Report or a Certificate of Completion from the TCEQ for the methanol contamination at the Site.

45. Celanese has not yet received a No Further Action letter from the TCEQ for the methanol contamination at the Site.

46. It will take longer than 4 years from January 1, 2009 to receive approval of a Response Action Completion Report or No Further Action letter from the TCEQ for the methanol contamination at the Site.

47. Brown & Root has not participated in the response to or clean-up of the methanol release.

48. Eby has not participated in the response to or clean-up of the methanol release.

## Conclusions of Law

1. Claims under the SWDA § 361.344 and CERCLA § 107 are governed by the same principles. *R.R. Street & Co. v. Pilgrim Enter.*, 166 S.W.3d 232, 242-43 (Tex. 2005).

**SWDA**

2. The elements of a cost recovery action under SWDA are that (1) the defendant is a person responsible for solid waste; (2) the TCEQ approved the plaintiff's removal or remediation action; (3) the action was necessary to address a release or threatened release of solid waste; (4) the costs were necessary and reasonable; and (5) plaintiff made reasonable attempts to notify the defendant of both the release and plaintiff's intent to take steps to eliminate the release. *R.R. Street*, 166 S.W.3d at 240.

3. Celanese made reasonable attempts to notify Eby and Brown & Root of the release and of its intent to take steps to eliminate the release.

4. A person may be a person responsible under the SWDA if the person "otherwise arranged" for the disposal of a hazardous substance. TEX. HEALTH & SAFETY CODE § 361.271.

5. In order to hold a defendant liable as an arranger under the SWDA, there must be a nexus between the defendant's conduct and the disposal of the hazardous substance. *R.R. Street*, 166 S.W.3d at 242.; *Geraghty and Miller, Inc. v. Conoco, Inc.*, 234 F.3d 917, 929 (5th Cir. 2000).

6. Arranger status is based on a person's authority, involvement, or obligation in regard to the disposal at issue. In evaluating arranger status, the court looks at the totality of circumstances in each case. The court's inquiry focuses on the defendant's actual control over the decision regarding the disposal. *R.R. Street*, 166 S.W.3d at 242-43.

7. Based on the jury's findings of fact, the court concludes that Eby is not a person responsible for solid waste under the SWDA.

8. Based on the jury's findings of fact, the court concludes that Brown & Root is not a person responsible for solid waste under the SWDA.

## CERCLA

9. The elements of a cost recovery action under CERCLA are that (1) the site is a facility; (2) there was a release or threatened release of a hazardous substance from the facility; (3) the plaintiff incurred necessary costs of response; and (4) the defendants are responsible persons under 42 U.S.C. § 9607(a). *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 668 (5th Cir. 1989).

10. The methanol pipeline is a facility within the meaning of CERCLA § 101(9).

11. The methanol release was a release of a hazardous substance within the meaning of CERCLA § 101(14).

12. Brown & Root and Eby are "persons" within the meaning of CERCLA § 101(21).

13. A person may be a person responsible under CERCLA if the person "otherwise arranged" for the disposal of a hazardous substance. 42 U.S.C. § 9607(a)(3).

14. The methanal release is a disposal within the meaning of CERCLA § 101(29).

15. In order to hold a defendant liable as an arranger, there must be a nexus between the defendant's conduct and the disposal of the hazardous substance. *Geraghty and Miller, Inc. v. Conoco, Inc.*, 234 F.3d 917, 929 (5th Cir. 2000).

16. In evaluating arranger status, the court considers a person's authority, involvement, or obligation in regard to the disposal at issue. The court looks at the totality of circumstances in each case. The court's inquiry focuses on the defendant's actual control over the decision regarding the disposal.

17. Knowledge that a process inherently results in a disposal can give rise to arranger liability. *Vine Street LLC v. Keeling*, 362 F. Supp. 2d 754, 760 (E.D. Tex. 2005) *U.S. v. Burlington Northern & Santa Fe Railway Co.*, 520 F.3d 918, 951 (9th Cir. 2008). Conversely, lack of knowledge may defeat a claim of arranger liability in a particular case. *See South Florida Water Manag. Dist. v. Montalvo*, 84 F.3d 402, 407-09 (11th Cir. 1996).

18. Having found that Eby did not know that the Celanese methanol pipeline had been damaged, the court concludes that Eby is not liable to Celanese as an arranger for disposal of a hazardous substance under CERCLA.

19. Having found that Brown & Root did not know that the Celanese methanol pipeline had been damaged by Eby, the court concludes that Brown & Root is not liable to Celanese as an arranger for disposal of a hazardous substance under or CERCLA.

The court will issue a separate take-nothing final judgment on Celanese's claims.[10]

Signed at Houston, Texas on April 13, 2009.

Stephen Wm Smith
United States Magistrate Judge

---

[10] Having concluded that neither defendant is liable, the court declines to make further findings or conclusions regarding damages or allocation.